620 A.2d 25

**COMMONWEALTH of Pennsylvania**

v.

**Todd A. LOEPER, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 12, 1992.

Filed Feb. 16, 1993.

Reargument Denied April 22, 1993.

34

Lawrence J. Hracho, Reading, for appellant.

Narcy L. Hughes, Asst. Dist. Atty., Reading, for appellee.

Before CAVANAUGH, WIEAND and McEWEN, JJ.

WIEAND, Judge:

Todd A. Loeper was tried by jury and was found guilty of driving while under the influence of alcohol in violation of 75 Pa.C.S. § 3731(a)(4).[1] In the same proceeding, the trial court, sitting as fact-finder, found Loeper guilty of the summary offense of reckless driving. Following the denial of post-trial motions, Loeper was sentenced on his drunk driving conviction to serve a term of imprisonment for not less than six (6) days nor more than twelve (12) months, to pay fines and costs of prosecution and treatment in an amount of $1,015.00, and to perform community service for a period of forty (40) hours. Loeper was also sentenced to pay a twenty-five ($25.00) dollar fine for reckless driving. On direct appeal from the judgment of sentence, the principal issue is whether the evidence was sufficient to support the drunk driving conviction in view of

1. 75 Pa.C.S. § 3731(a)(4) provides:
   § 3731. **Driving under influence of alcohol or controlled substance**
       **(a) Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:
       . . . .

       (4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

the fact that appellant's blood test had been administered approximately two hours after he had been stopped by police.

In reviewing a challenge to the sufficiency of the evidence we must determine "whether, viewing all the evidence admitted at trial, together with all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth as the verdict winner, the jury could have found that each and every element of the charged offenses was proved beyond a reasonable doubt." *Commonwealth v. Sanchez*, 416 Pa.Super. 160, 166, 610 A.2d 1020, 1023 (1992). See: *Commonwealth v. Smith*, 523 Pa. 577, 581, 568 A.2d 600, 602 (1989); *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). "[I]t is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence." *Commonwealth v. Tate*, 485 Pa. 180, 182, 401 A.2d 353, 354 (1979). See also: *Commonwealth v. Guest*, 500 Pa. 393, 396, 456 A.2d 1345, 1347 (1983); *Commonwealth v. Rose*, 463 Pa. 264, 268, 344 A.2d 824, 826 (1975). The facts and circumstances established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977), quoting *Commonwealth v. Libonati*, 346 Pa. 504, 508, 31 A.2d 95, 97 (1943). See also: *Commonwealth v. Kravitz*, 400 Pa. 198, 215, 161 A.2d 861, 869 (1960), *cert. denied*, 365 U.S. 846, 81 S.Ct. 807, 5 L.Ed.2d 811 (1961).

On September 28, 1990, at or about 12:40 a.m., Officer Ronald Mohl of the Leesport Police Department stopped a tractor trailer on Route 61 in Ontelaunee Township, Berks County. While Mohl was standing along the berm of the road, speaking with the operator of the vehicle which he had stopped, a red Chevrolet pickup truck sped past. A portion of the Chevrolet brushed Officer Mohl's shoulder. Mohl ran to

his patrol car and summoned assistance. Officer Thomas Link, of the Maiden Creek/Ontelaunee Police Department, began pursuit of the red pickup truck. Shortly thereafter, he and Mohl were able to stop the red truck, which was being driven by Todd Loeper, the appellant. Loeper's speech was very slurred, his eyes were bloodshot and watery, and he emitted an odor of alcohol. When asked to perform field sobriety tests, Loeper refused and demanded that he be given a blood test. Therefore, he was placed under arrest and taken to the Reading Hospital and Medical Center, where a blood sample was drawn at 2:42 a.m., about two hours after he had been stopped by police.

At trial, the Commonwealth called the director of the Department of Pathology at Reading Hospital, Dr. I. Donald Stuard, who testified that a blood serum test performed shortly after Loeper's blood sample had been taken disclosed a blood alcohol content of .17%. On cross-examination, he conceded that when measured by whole blood, rather than by blood serum, appellant's blood alcohol content would have been .141%.[2] Dr. Stuard testified further that the blood test results reflected appellant's blood alcohol content at the time his blood was drawn and not at the time when he had operated his vehicle two hours earlier. The Commonwealth made no attempt to have Dr. Stuard relate the blood test results back to the time when appellant had been stopped by the police.

After the Commonwealth rested, the defense called, as an expert witness, Dr. John J. Spikes, a forensic toxicologist. Dr. Spikes testified regarding the normal rate at which alcohol is

**2.** In *Commonwealth v. Bartolacci*, 409 Pa.Super. 456, 459–460, 598 A.2d 287, 288 (1991), allocatur denied, 530 Pa. 638, 607 A.2d 249 (1992), the Superior Court held that, where a test is performed on blood serum rather than whole blood, the fact-finder must be provided with evidence converting the test results to reflect a whole blood analysis, and that, absent such a conversion, evidence of test results based solely on blood serum would not suffice to sustain a conviction pursuant to 75 Pa.C.S. § 3731(a)(4). See also: *Commonwealth v. Wanner*, 413 Pa.Super. 442, 446–450, 605 A.2d 805, 807–809 (1992) (blood test results acquired from blood plasma rather than whole blood not sufficient to sustain conviction under § 3731(a)(4) absent evidence converting test results into amount of alcohol by weight in the whole blood).

absorbed into the blood stream and the variables which may affect that rate. In response to hypothetical questioning based upon appellant's testimony regarding his weight and the timing and amount of alcohol and food appellant had consumed on the night of his arrest, Dr. Spikes said with respect to a person having the characteristics of appellant that it would be difficult to predict the blood alcohol level two hours before the test because at that time the blood alcohol level would still have been rising.

In *Commonwealth v. Jarman*, 529 Pa. 92, 601 A.2d 1229 (1992), the Supreme Court of Pennsylvania held evidence insufficient to show a violation of 75 Pa.C.S. § 3731(a)(4) where a blood test administered an hour after the defendant had been stopped produced a blood alcohol reading of .114% and it was unknown whether his blood alcohol content had been rising or falling at the time of the test. Without evidence relating the test results to the time of operating a vehicle, the Court concluded, a jury would be permitted "to engage in unbridled speculation as to whether [defendant's] blood alcohol level was at or above .10% at the critical time." *Id.* at 97, 601 A.2d at 1231. Similarly, in *Commonwealth v. Modaffare*, 529 Pa. 101, 601 A.2d 1233 (1992), where blood had been drawn one hour and fifty minutes following a vehicular accident, a test result of .108% was insufficient to show that the defendant had a blood alcohol content of .10% or greater at the time of the accident. *Id.* at 106–107, 601 A.2d at 1236.

In *Commonwealth v. Osborne*, 414 Pa.Super. 124, 606 A.2d 529 (1992), the Superior Court had an opportunity to interpret and apply the *Jarman* and *Modaffare* holdings to a case in which a blood alcohol reading of .1488% had been obtained as a result of a blood test administered fifty (50) minutes after the defendant had been stopped by police. The Court observed:

> The supreme court in both [Jarman and Modaffare] held that a strong inference of guilt due to an illegal BAC while the accused is driving would exist where the BAC test result significantly departed above 0.10 percent and where a blood sample had been obtained a short time after the accused

had been stopped by the police.  Otherwise, as in *Jarman* and *Modaffare*, where the respective BAC test results had minimally exceeded 0.10 percent and where the suspects' blood samples had been drawn shortly after they were stopped by the authorities, this inference is considerably weakened.

However, the supreme court did not draw a bright numerical line between what it would consider to be a minimal upward departure suggesting a weak inference of guilt and what would constitute a significant upward deviation which would give rise to a strong inference of guilt.  In like vein, the supreme court failed to establish a temporal cut-off for the drawing of a suspect's blood to indicate either a weak or a strong inference of guilt.  In our view, and in accordance with the dual standards set by our supreme court in *Jarman* and *Modaffare*, the stronger the inference of guilt, the less significant is the necessity for evidence of relating back.  Conversely, the weaker the inference of guilt, the more vital is the necessity for evidence of relating back an accused's BAC test result to the time of driving.

*Id.* at 128, 606 A.2d at 531.  Nevertheless, the Court held that the evidence before it was insufficient to uphold a conviction for violating 75 Pa.C.S. § 3731(a)(4).  The Court said, it did not view Osborne's blood alcohol reading as a "substantial departure" from the permissible limit.  Moreover, the time lag, the Court said, was "significant" considering Osborne's uncontroverted testimony that she had consumed alcohol only forty-five minutes before being stopped.  Because the defendant's blood alcohol may have been rising at the time when she was stopped, the inference of guilt was too weak to base a conviction thereon in the absence of evidence relating the driver's blood alcohol content back to the time when she was driving a vehicle.  As no such evidence had been offered, Osborne's conviction was reversed.  *Id.* at 128–130, 606 A.2d at 531–532.

In the instant case, appellant's blood alcohol content was determined to be approximately .141%.  However, the blood test was not administered until approximately two hours after

appellant had been stopped. Without additional evidence, under the decided cases, the result of the blood test would be insufficient to show a blood alcohol content of 0.10% or greater at the time when appellant was stopped.

In fact, however, there was additional evidence. Both police officers testified that appellant, when stopped, slurred his speech. The expert witness called by appellant testified during cross-examination that people do not generally slur their speech when they have a blood alcohol content of only 0.10%. Most people, he said, do not begin to exhibit visible signs of intoxication until they achieve a level of approximately .15%. From this evidence, a fact-finder could infer (1) that appellant's blood alcohol content was in excess of 0.10% at the time when he was stopped, and (2) that appellant's blood alcohol content did not rise between the time he was stopped and the time when his blood was tested.

Under the circumstances of this case, therefore, it cannot be said that the jury's finding of a violation of 75 Pa.C.S. § 3731(a)(4) was based solely on unbridled speculation. On the contrary, the evidence and the reasonable inferences to be drawn therefrom, when considered in a light most favorable to the Commonwealth, were sufficient to enable the jury to conclude beyond a reasonable doubt that appellant was guilty of drunk driving in violation of 18 Pa.C.S. § 3731(a)(4).[3]

■■■ There is no merit in appellant's several arguments that his convictions violated principles of double jeopardy. As all the cases agree, jeopardy did not attach at the time of the preliminary hearing before the magistrate. See: *Liciaga v.*

---

3. Appellant has not challenged in this appeal the court's instructions by which the issue of guilt or innocence was submitted to the jury. The issue which the jury was asked by the court to decide was whether appellant's blood alcohol was at or in excess of 0.10 percent while he was driving a vehicle. In so doing, the jury was free to consider all the evidence, including appellant's slurred speech at the time of his arrest and the expert testimony regarding the level of blood alcohol which was necessary to produce such an effect. Therefore, it is difficult to comprehend the position of the dissent that appellant is entitled to have his conviction vacated merely because the trial court, during its charge to the jury, failed to make specific reference to each piece of evidence which the jury could consider in arriving at its verdict.

*Court of Common Pleas of Lehigh County,* 523 Pa. 258, 264, 566 A.2d 246, 248–249 (1989); *Commonwealth v. Genovese,* 493 Pa. 65, 69 n. 7, 425 A.2d 367, 369 n. 7 (1981); *Commonwealth v. Flanders,* 247 Pa.Super. 41, 43–44, 371 A.2d 1316, 1317 (1977). Therefore, the fact that the magistrate found an absence of prima facie evidence to support prosecutions for disorderly conduct and a violation of 75 Pa.C.S. § 3731(a)(1) did not prevent the same magistrate from returning to court for further proceedings the charges of reckless driving and violating 75 Pa.C.S. § 3731(a)(4). Indeed, there is no inconsistency whatsoever in the magistrate's decision. All charges were for offenses which involved different elements, so that a determination of insufficient evidence of one did not in any way prevent a guilty finding with respect to the others.

The judgment of sentence is affirmed.

CAVANAUGH, J., files a Dissenting Opinion.

CAVANAUGH, Judge, dissenting:

I respectfully dissent from the result reached by the majority because it affirms the conviction on a theory which may not have been before the jury. There is nothing in the record which shows that the court charged the jury that it could return a guilty verdict if it found that evidence other than the results of the blood alcohol test would be sufficient to establish that the appellant's blood alcohol level was 0.10% or greater.

Appellant was originally charged with two drunk driving offenses: 1) driving while under the influence of alcohol to a degree which renders one incapable of safe driving, 75 Pa.C.S. § 3731(a)(1) and (2) driving while the amount of alcohol by weight in the blood is 0.10% or greater, 75 Pa.C.S. § 3731(a)(4). At the preliminary hearing, the § 3731(a)(1) charge was dismissed and the § 3731(a)(4) charge was held for trial. Therefore, at trial it was the burden of the Commonwealth to prove the blood alcohol content of the appellant.

I do not believe it is possible to affirm appellant's conviction where the record does not indicate whether the jury was properly charged on the legal theory upon which the majority

affirms. Unless the trial court instructed the jury that it could conclude that the evidence, independent of the results of the blood alcohol test, could be sufficient to prove that appellant's blood alcohol level exceeded 0.10%, I believe that the conviction should not be upheld.[1] On this basis, I respectfully dissent and would vacate the judgment of sentence imposed for violation of 75 Pa.C.S. § 3731(a)(4).

---

1. The majority (n. 3), it seems, misconstrues the import of this dissent. The proposition does not relate to the court's duty to "make specific reference to each piece of evidence" but rather to the doctrine that an appellate court may not affirm a conviction of a crime based on a theory of criminal responsibility that was not before the jury.