405 A.2d 509

**COMMONWEALTH of Pennsylvania ex rel. Elizabeth P. DIMPTER, Appellant,**

v.

**Robert KAPP.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1978.

Decided May 25, 1979.

Charles S. Frazier, Wayne, for appellant.

Robert L. Pinto, Media, for appellee.

Before CERCONE, HESTER and HOFFMAN, JJ.

HESTER, Judge:

This court has before it the appeal of Commonwealth ex rel. Elizabeth P. Dimpter from the lower court's order under date of March 21, 1978, which quashed the criminal complaint dated June 30, 1977, brought against appellee, Robert Kapp.

The procedural history is as follows: On May 10, 1976, appellant-prosecutrix filed a criminal information against appellee under 18 Pa. C.S.A. 4323,[1] Neglect to Support Bastard, wherein it was alleged:

> "Actor and Affiant did engage in sexual intercourse on a regular basis between January 1, 1975 until February 21, 1975, at 33 Chester Pike, Ridley Park, as a result of which

---

1. § 4323.  Neglect to support bastard

    (a) Offense defined.  A person is guilty of a misdemeanor of the third degree if he, being a parent, willfully neglects or refuses to contribute reasonably to the support and maintenance of a child born out of lawful wedlock, whether within or without this Commonwealth.

a daughter, Elizabeth Heidi Dimpter, was born on 9 November 1975; said Actor refuses to support said child."

Prior to indictment being found, appellee filed an Application to Quash the Transcript or to Remand to District Justice for Hearing and for Blood Test. On June 21, 1976, the return date, the following dialogue in open court took place:

THE COURT: Is your motion to quash a basis for testimony?

MR. PINTO: No, this is a paternity action brought against my client.

THE COURT: F and B or Neglect to Support?

MR. PINTO: Neglect to Support, Your Honor.

THE COURT: Well, that statute has been ruled unconstitutional. Is anybody going to take a position for the Commonwealth before I dismiss it?

MR. SPITZ: Your Honor, if I may, I have no position to offer to the Court.

THE COURT: Well, Mr. Spitz, so you might understand, it is my recollection that that statute was declared unconstitutional because it penalizes only the husband.

MR. SPITZ: I recall a similar occasion.

THE COURT: The charges are dismissed, period. Motion is granted.

(Reproduced Record, page 10a)

No appeal was taken[2]; nor were any Petitions or Motions filed for a rehearing or to revoke the court's order.

On June 30, 1977, appellant instituted a second criminal action against appellee, pursuant to 18 Pa. C.S.A. 4323 (Failure to Support Bastard), wherein it was alleged:

"Actor and Affiant did engage in sexual intercourse on a regular basis between January 1, 1975 and February 21,

2. Subsequent thereto, the constitutionality of 18 Pa. C.S.A. 4323 was upheld by a Delaware County court en banc in another case, *Commonwealth v. Bachle*, 64 Del.Co. 182 (1977). For similar earlier holdings, see *Commonwealth v. Felbaum*, 70 D. & C.2d 105, 57 West. 121 (1973); *Commonwealth v. Dearth*, 72 D. & C.2d 503, 38 Fay.L.J. 38 (1975).

1975, at 33 Chester Pike, Ridley Park, as a result of which a daughter, Elizabeth Heidi Dimpter, was born on 9 November 1975; said Actor refuses to support said child."

Following a preliminary hearing, appellee was held for court. Thereafter, following his arraignment, appellee filed an Application to Quash Indictment or Information.

Following argument on said application before a court en banc, the court entered the order dated March 21, 1978, granting appellee's motion and quashed the second criminal information (of June 30, 1977). The lower court concluded that since the June 21, 1976 order which dismissed the first Failure to Support Bastard charge was an appealable order and no appeal having been taken; that first dismissal was final, and the doctrine of double jeopardy or collateral estoppel precluded appellee's prosecution on the second criminal complaint. Hence, the lower court's action in quashing the criminal complaint dated June 30, 1977. It is from that order the instant appeal has been taken.

Does either the doctrine of double jeopardy or collateral estoppel bar the instant proceeding?

It is the opinion of this court that neither the doctrine of double jeopardy nor collateral estoppel bar the instant proceeding, and that the lower court erred in quashing the criminal complaint dated June 30, 1977. The order of the lower court dated March 21, 1978 will be set aside and appellant's complaint will be reinstated.

There is no doubt that double jeopardy[3] principles apply to prosecutions under 18 Pa. C.S.A. 4323. *Riddle Appeal,* 227 Pa.Super. 68, 323 A.2d 115 (1974); and recently reaffirmed in *Commonwealth v. Garris,* 247 Pa.Super. 455, 372 A.2d 914 (1977). However, this determination is not dispositive of the instant appeal.

Moreover, double jeopardy concepts have been codified by 18 Pa. C.S. § 109 which provides:

When a prosecution is for a violation of the same provision of the statutes and is based upon the same facts

---

3. U.S. Const. Amend. V; Pa. Const. art. 1, § 10.

as a former prosecution, it is barred by such former prosecution under the following circumstances:

(1) *The former prosecution resulted in an acquittal.* There is an acquittal if the prosecution resulted in a finding of not guilty by the trier of fact or in a determination that there was insufficient evidence to warrant a conviction. A finding of guilty of a lesser included offense is an acquittal of the greater inclusive offense, although the conviction is subsequently set aside.

(2) The former prosecution was terminated, *after the indictment had been found,* by a final order or judgment for the defendant, which has not been set aside, reversed, or vacated and which necessarily required a determination inconsistent with the fact or a legal proposition that must be established for conviction of the offense. (Emphasis added)

Although the instant case can be distinguished from *Commonwealth v. Garris* (supra) on the technical basis that in *Garris*, the second prosecution for failure to support was based upon different operative facts (support was sought for a different time period), while here the factual allegations are almost identical;[4] in neither case does § 109 apply, nor was either appellee placed in jeopardy, in the constitutional sense, as a result of their first prosecutions.

Section 109 is non-dispositive of the instant case because the former prosecution neither resulted in an acquittal nor was it terminated, after the indictment had been found. In fact, *prior to indictment being found,* the complaint was dismissed.

Nor was appellee placed in jeopardy in the constitutional sense under the first criminal complaint.

As an aid to the decision of cases in which the prohibition of the Double Jeopardy Clause has been invoked, the

---

**4.** The only factual difference found is in language, i. e., " . . . between January 1, 1975 *until* February 21, 1975," as opposed to " . . . between January 1, 1975 *and* February 21, 1975." (Emphasis added).

courts have found it useful to define a point in criminal proceedings at which the constitutional purposes and policies are implicated by resort to the concept of "attachment of jeopardy." (citation omitted). In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn. *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). In a non-jury trial, jeopardy attaches when the court begins to hear evidence. *McCarthy v. Zerbst*, 85 F.2d 640, 642 (CA 10 1936). See *Wade v. Hunter*, 336 U.S. 684, 688, 69 S.Ct. 834, 93 L.Ed. 974 (1949). *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265, 274 (1975). See also *Commonwealth v. Almeida*, 362 Pa. 596, 68 A.2d 595 (1949); *Commonwealth v. Curry*, 287 Pa. 553, 135 A. 316 (1926).

The above was also cited in *Garris*, supra.

Here appellee's motion to quash the transcript was granted prior to jeopardy ever attaching.

The order of the lower court dated March 21, 1978 is set aside and appellant's complaint is reinstated.

HOFFMAN, J., files a concurring opinion.

HOFFMAN, Judge, concurring:

I agree with the result reached by the majority, but for a different reason.

In both criminal complaints, appellant alleged that the defendant fathered the child sometime between January 1, 1975 and February 21, 1975. However, the second complaint charges failure to support this child over a later time period than was possible in the first complaint. Because Section 4323 is the offense of failure to support an illegitimate child, and not of fathering one,[1] the two complaints thus charge two different and separate offenses. *See Commonwealth v. Garris*, 247 Pa.Super. 455, 458, 372 A.2d 914, 916 (1977).

1. In fact, fornication and bastardy, Act of June 24, 1939, P.L. 872, § 506, is no longer a criminal offense in Pennsylvania. *See* Act of December 6, 1972 P.L. 1482, 1611; No. 334 Section 5(a).

Thus, the proper analysis here is not double jeopardy but whether this second prosecution is barred by the doctrine of collateral estoppel.

Under the circumstances of this case, state statutory collateral estoppel, 18 Pa.C.S.A. § 110, would bar this prosecution only if the prior prosecution ended in an acquittal or other termination which necessarily required a factual determination inconsistent with a fact which must be established in the second prosecution. Here, the first prosecution was terminated when the trial judge dismissed it upon his belief that Section 4323 was unconstitutional. As this disposition neither acquitted Kapp nor involved any factual determination on the merits, this second prosecution is not barred by Section 110. Furthermore, in light of the fact that the merits have never been tried, this second prosecution does not violate the constitutional collateral estoppel rule of *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). *See Commonwealth v. Klinger*, 264 Pa.Super. 21, 398 A.2d 1036 (1979) (HOFFMAN, J., dissenting).